MOTORCOACH OPERATORS' ASS'N, INC., *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — TRANSPORTATION — CIVIL SERVICE — CLASSIFICATION—SENIORITY RIGHTS.

Statute authorizing home rule cities to acquire public transportation utilities and requiring officials in charge of operation to establish a system of civil service within a reasonable time carries no classification of operators of transportation facilities and is silent on subject of seniority rights or privileges (1 Comp. Laws 1929, § 2236).

2. SAME—HOME RULE CITIES—CHARTER AMENDMENTS.

A home rule city may place in its charter, by amendment duly adopted, any provision for its government or regulation of municipal affairs deemed advisable and not in contravention of the general statutory regulation and provision of the Constitution.

3. SAME—CLASSIFICATION OF TRANSPORTATION EMPLOYEES—SENIORITY RIGHTS—CHARTER AMENDMENT.

Division or classification of municipal employees engaged in transportation service established with seniority of members therein based on length of service, pursuant to general policy provisions set forth in statute, whether such classes are expressly established by municipal action or arising out of recognition, may be changed by subsequent charter amendment (1 Comp. Laws 1929, § 2236).

4. SAME—CIVIL SERVICE—MERIT SYSTEM—CAREER SYSTEM—SENIORITY OF SERVICE.

Civil service should carry the merit system and take cognizance of the so-called career system and, within the purpose of those systems, may consider seniority in service, but the latter has no separate standing in the system nor should it be constituted the governing rule.

5. SAME—CIVIL SERVICE—CHARTER CONTROL—TRANSPORTATION SERVICE EMPLOYEES.

Seniority in service is not a *sine qua non*, but only an adoptive incident of civil service and classification of municipal employees engaged as streetcar and motorcoach operators in public transportation service is subject to charter provision control in adoption, change and regulation in the absence of statutory mandate to the contrary.

6. SAME—SENIORITY RIGHTS—TRANSPORTATION SERVICE EMPLOYEES.

Action of home rule city in changing, by way of charter amendments, seniority rights of employees engaged in public motorcoach transportation system by dating seniority from time of commencement of service in streetcar branch of the transportation system if employee had been there employed *held*, matter within control of people of city involved (Detroit charter, title 4, chap. 13, §§ 23, 24).

7. COSTS—PUBLIC QUESTION.

No costs are allowed in proceedings to enjoin enforcement of seniority rights of transportation service employees as set

forth in amendment of home rule charter, a public question being involved (Detroit charter, title 4, chap. 13, §§ 23, 24).

POTTER, J., dissenting.

Appeal from Wayne; Smith (Fred P.), J., presiding. Submitted April 5, 1938. (Docket No. 135, Calendar No. 40,063.) Decided May 5, 1938. Rehearing denied June 14, 1938.

Bill by Motorcoach Operators' Association, Inc., a non-profit Michigan corporation, and others against City of Detroit, a municipal corporation, and Board of Street Railway Commissioners to enjoin the operation of a charter provision relative to seniority in defendants' transportation service. Arthur Markam and other motormen and conductors intervened as parties plaintiff to establish seniority rights. Division No. 26, Amalgamated Association of Street, Electric Railway and Motorcoach Employees of America, a voluntary association, and others intervened as parties defendant. Bills of plaintiffs and intervening plaintiffs dismissed. Plaintiffs appeal. Affirmed.

*Edward N. Barnard* (*Louis H. Fead,* of counsel), for plaintiffs.

*Seddon Llewellyn Etherton,* for intervening plaintiffs.

*Clarence E. Page* and *James S. Shields,* for defendants.

*Thomas F. Chawke* and *Carl V. P. Daugherty,* for intervening defendants.

WIEST, C. J. Bill by the Motorcoach Operators' Association, Inc., to enjoin the city of Detroit and its

board of street railway commissioners from acting and operating under a duly adopted charter amendment.

The city of Detroit has a home rule charter, and owns and operates, for public transportation service, streetcars and motorcoaches.

Motorcoach operators, engaged in rendering such service, contend that operators of streetcars cannot be permitted, even by charter provision, to retain their earned seniority in transportation service if and when they become operators of motorcoaches, claiming that time in streetcar service cannot be so computed and recognized, and filed the bill herein, in the Wayne circuit court, to have it so decreed.

The bill was dismissed and the case is here by appeal.

The Constitution (1908), art. 8, § 21, empowers a city to adopt, amend and operate under a home rule charter, "subject to the Constitution and general laws of this State," and section 23, of the same article, empowers a city, having more than 25,000 inhabitants, to acquire, own and operate public utility transportation facilities, with service "to the municipality and the inhabitants thereof."

The general statute, 1 Comp. Laws 1929, § 2236 (Stat. Ann. § 5.2079), relative to home rule cities, under the heading of permissible charter provisions, provides that each city may in its charter provide for the purchase of existing street railways and for municipal operation thereof, and:

"Within a reasonable time after the acquisition of a public transportation utility the officials in charge of the operation shall establish a civil service for the selection and retention of its employees."

That statute carries no classification of operators of transportation facilities, nor does it speak on the

subject of seniority rights or privileges. It commanded the officials in charge of operation of the acquired system of transportation to establish a system of civil service within a reasonable time, but provided no alternative self-executing action.

The city owned and operated some transportation system prior to its acquisition in 1922 of the private utility known as the Detroit United Railways. Such municipal system, owned prior to the mentioned acquisition, was operated under charter authority by the city board of street railway commissioners and the subsequently acquired private system came under the charge of the same operating board. In 1925 the city established motorcoach transportation service. Up to 1932 the Detroit Motorbus Company, a private utility, also furnished motorbus transportation but that year, and without purchase by the city, was excluded from operation upon the streets of the city. Thereupon the board of street railway commissioners, having charge of the streetcar and motorcoach transportation systems, determined to permit streetcar motormen and conductors, who could qualify as motorcoach operators, to select runs on certain coach lines on the basis of their seniority, counting their continuous period of service as motormen and conductors, inclusive of their service with the Detroit United Railways.

Litigation appears to have followed, but without adjudication, evidently being supplanted by charter amendment, sponsored by plaintiff Motorcoach Operators' Association, Inc., and adopted November 5, 1935, under which title 4, chap. 13, § 23 of the charter, was made to provide:

"Said buses and equipment may be operated either independently of, or in conjunction with the public street railway system contemplated in this chapter,

but the seniority and consequent preference of employment of employees engaged in trackless transportation shall date as of the date of the initial employment of such employees in the division of trackless transportation known as the motorcoach division, and the seniority of such employees shall at all times be wholly and absolutely separate and distinct from that of any other employees of the system, and it shall be the duty of the board to recognize and enforce the system of seniority in such division as herein provided.''

This command, by charter amendment, invoked by plaintiffs herein and adopted by the electorate of the city, was, as it should have been, recognized as authoritative on the subject and established the system of seniority for motorcoach operators in accord therewith. This evidently led to the charter amendment in suit, sponsored by the street car operators, whose initial service was with the Detroit United Railways.

April 5, 1937, at an election, the charter of the city was amended and now provides, title 4, chap. 13, § 23:

''Power and authority is hereby conferred in the board of street railway commissioners of the city of Detroit to acquire, construct or purchase and to own, maintain and operate gasoline motor buses, trackless trolley buses, or such other types of trackless transportation as said board may deem necessary or desirable for the purpose of supplying transportation to the inhabitants of the city of Detroit. * * * Said buses and equipment may be operated either independently of, or in conjunction with the public street railway system.''

And section 24 was amended to read:

''Said board of street railway commissioners shall establish a complete and uniform system of seniority

service for all employees not classified as executive employees of the said board of street railway commissioners, engaged in transportation service, under which system the continuous service of said employees shall be deemed to have commenced from the date of their initial employment by the said board of street railway commissioners, except as to employees engaged on any part of the transportation system which has been acquired by purchase, the initial date of the continuous service of such employees shall be deemed to have commenced from the date of their employment by their previous employer or employers from whom such part of the transportation system has been acquired by purchase. The system of seniority service herein required to be established shall be enforced by the said board of street railway commissioners without discrimination being made between employees engaged in the operation of the rail and the trackless system of transportation.''

Plaintiffs contend that:

''By virtue of 1 Comp. Laws 1929, § 2236 (Stat. Ann. § 5.2079), (home rule act) it was the duty of the board to establish civil service for the selection and retention of all of its employees; that by virtue of such statute and the passage of more than a reasonable time, plaintiffs long since automatically came under civil service; that by specific action of the board, by certain resolutions mentioned hereafter, plaintiffs had been given civil service status as motorcoach operators.''

The city charter, adopted in 1918, was silent upon the subject of trackless transportation, but by amendment in 1921, attention was given the matter and, about 1924, motorcoach service was commenced, and plaintiffs claim that, ever since the inception of the motorcoach division, the employees thereof have enjoyed a seniority, separate and distinct from that of

the rail division; that is a rail employee could not avail himself of a longer service in the rail division to transfer to the coach division and supplant a coach employee whose seniority in the coach division was less than the seniority of the other employees in the rail division.

The city of Detroit, empowered with the right of home rule, may place in its charter, by amendment duly adopted, any provision for its government or regulation of municipal affairs, deemed advisable and not in contravention of the general statutory regulation and provision of the Constitution.

The statute, 1 Comp. Laws 1929, § 2236 (Stat. Ann. § 5.2079), mandates a general policy, leaving regulatory provisions, consonant therewith, to municipal action. Division or classification of municipal employees, engaged in transportation service, may be established with seniority of members therein based on length of service, but such classes, whether expressly established by municipal action or arising out of recognition, cannot bar subsequent municipal action, authorized by charter amendment, expressive of the will of the people.

Civil service should, of course, carry the merit system and take cognizance of the so-called career system and, within the purpose of those systems, may consider seniority in service but the latter has no separate standing in the system, nor should it be constituted the governing rule. Establishment of seniority in service of employees is not a *sine qua non,* but only an adoptive incident of civil service and a classification among municipal employees engaged as streetcar and motorcoach operators in public transportation service is casual, not stationary, and subject to charter provision control in adoption, change and regulation in the absence of statutory mandate to the contrary.

We find no legal impediment to what the people of the city of Detroit have done in the premises and, therefore, must leave the whole matter where it belongs, with the people of the city of Detroit.

In point of law, there is no merit in the contentions of plaintiffs and the decree dismissing the bill is affirmed. A public question being involved, there will be no costs to either party.

Butzel, Sharpe, Chandler, North, and McAllister, JJ., concurred with Wiest, C. J.

Potter, J. (*dissenting*). I am not in accord with the majority opinion herein.

The Constitution (1908), art. 8, § 20, provides:

"The legislature shall provide by a general law for the incorporation of cities."

Section 21, art. 8, provides:

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, *and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village* and, through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns, *subject to the Constitution and general laws of this State.*"

Act No. 279, Pub. Acts 1909 (1 Comp. Laws 1929, § 2236[1] [Stat. Ann. § 5.2079(1)]), the home rule statute for cities, provides:

"Within a reasonable time after the acquisition of a public transportation utility *the officials in charge of the operation* shall establish a system of civil service for the selection and retention of its employees."

This is the general law of this State authorizing the adoption of municipal home rule charters and to which all such charters must conform.

The municipal home rule act in relation to cities above referred to also provides:

*"No provision of any city charter shall conflict with or contravene the provisions of any general law of the State."* 1 Comp. Laws 1929, § 2272 (Stat. Ann. § 5.2116).

The charter of the city of Detroit, as amended in 1937 by the people of the city, attempts to establish a seniority in civil service, directly contrary to the constitutional provision above quoted and to Act No. 279, Pub. Acts 1909, as amended, the Michigan home rule act for cities, which expressly vests the authority in the "officials in charge of the operation."

The question of civil service and seniority rights under the charter and under the law is vested in the "officials in charge of the operation" of the transportation system, and cannot be altered or controlled by charter in violation of this provision of the statute.

Plaintiffs should be entitled to the relief prayed, but without costs, a public question being involved.

BUSHNELL, J., did not sit.