OLSON v. CITY OF HIGHLAND PARK.
COULTER v. SAME.
RUSSELL v. SAME.

1. MUNICIPAL CORPORATIONS—HOME RULE CITIES—PATROLMEN—OFFICERS—EMPLOYEES.

Whether or not a patrolman for a home rule city is an officer or an employee entitled to pay for time required in employment beyond 40 hours per week, depends primarily upon the provisions of city charter (Highland Park Charter, chap. 12, §§ 2, 3, 8, 12; chap. 25, § 33, par. [c]).

2. SAME—PATROLMEN—CHARTER—OVERTIME PAY.

Patrolman in the employ of a home rule city, who was paid a regular annual salary, semimonthly, *held*, an officer and not an employee of the city, hence was not entitled, under charter provisions, to pay for time required in employment beyond 40 hours per week, in the absence of provision therefor in the charter, rules and regulations of the police department or ordinances of the city (Highland Park Charter, chap. 12, §§ 2, 3, 8, 12; chap. 25, § 33, par. [c]).

3. SAME—POLICE MATRONS—OVERTIME PAY.

Police matron of home rule city whose police department rules and regulations specifically provide such matrons shall not be a member of the police force, was not necessarily an employee of the

the city, hence, as such, entitled to pay for overtime pursuant to charter provisions notwithstanding she performed some services prescribed by State statute wherein the term ''office'' is used in referring to such position (1 Comp. Laws 1929, § 2716 *et seq.*; Highland Park Charter, chap. 10, § 5; chap. 12, §§ 2, 3, 8, 12; chap. 25, § 33, par. [c]).

4. SAME—HOME RULE CHARTER—STATUTES—HOURS AND CONDITIONS OF EMPLOYMENT.

Provisions of a home rule city charter relative to hours and conditions under which men, women and children are employed by it, which are not contrary to State law, are not void (Const. 1908, art. 5, § 29; Highland Park Charter, chap. 10, § 5; chap. 12, §§ 2, 3, 8, 12; chap. 25, § 33, par. [c]).

5. SAME—TELEPHONE DISPATCHER—SWITCHBOARD OPERATOR—OVERTIME PAY.

Telephone dispatcher and switchboard operator for police, fire and other departments of home rule city, being an employee of the city, is entitled to pay for overtime pursuant to city charter provisions (Highland Park Charter, chap. 12, §§ 2, 3, 8, 12; chap. 25, § 33, par. [c]).

6. SAME—PAY CHECKS—INDORSEMENT AS WAIVER TO CLAIM FOR OVERTIME.

The acceptance and indorsement of semimonthly pay checks by employees of a home rule city does not constitute a waiver or release of, or an estoppel to, claims for compensation for overtime (Highland Park Charter, chap. 25, § 33, par. [c]).

7. SAME—OVERTIME PAY FOR EMPLOYEES—CHARTER AMENDMENT—EFFECTIVE DATE.

Where home rule city's fiscal year began on July 1st, amendment to charter establishing city employees' right to overtime pay contemplated an increased expenditure of funds by the municipality, hence under home rule act did not become effective and entitle employees to overtime pay until July 1st following adoption at November election (1 Comp. Laws 1929, § 2260; § 2261, as amended by Act No. 279, Pub. Acts 1929; Highland Park Charter, chap. 25, § 33, par. [c]).

8. COSTS—ACTION AGAINST HOME RULE CITY—OVERTIME PAY FOR EMPLOYEES.

No costs are allowed in consolidated actions against home rule city for overtime pay by a patrolman and employees of the city because of the nature of the cases (Highland Park Charter, chap. 10, § 5; chap. 12, §§ 2, 3, 8, 12; chap. 25, § 33, par. [c]).

9. MUNICIPAL CORPORATIONS—OVERTIME WORK.

   Performance by city employees of services which, if not per-
   formed, would have resulted in a serious loss, damage or im-
   pairment of the city's service constituted performance in
   cases of emergency and entitled plaintiffs to compensation
   for overtime work (Highland Park Charter, chap. 25, § 33,
   par. a).

Appeal from Wayne; Moynihan (Joseph A.), J.
Submitted October 9, 1945. (Docket Nos. 55–57,
Calendar Nos. 43,163–43,165.) Decided December 3,
1945. Rehearings denied January 11, 1946.

Separate actions of assumpsit by Fred E. Olson,
Frances Coulter, and Julian F. Russell against the
city of Highland Park for overtime. Cases tried to-
gether and consolidated for appeal. From judgment
for defendant, plaintiff Olson appeals. From judg-
ments for plaintiff Coulter and Russell, defendant
appeals. Judgment for defendant against plaintiff
Olson affirmed. Judgments for plaintiffs Coulter
and Russell modified and affirmed.

*William B. Giles* and *Julian F. Russell,* for plain-
tiffs.

*Earl B. Young* and *Claude H. Stevens,* for de-
fendant.

BUSHNELL, J. These three cases were tried to-
gether in the circuit court, and by stipulation were
consolidated on appeal. In the first case, Fred E.
Olson, a member of the police force of the city of
Highland Park, brought an action for compensation
for overtime services rendered in excess of 40 hours
per week between the dates of November 10, 1940,
and May 24, 1943, in the amount of $1,635.29. The
circuit judge, sitting without a jury, held that, being

an officer of the police department, Olson was not entitled to recover for overtime pay.

In the second case, Frances Coulter, a police matron of the city of Highland Park, sought a judgment in the sum of $3,538.92 as compensation for overtime services rendered in excess of 40 hours per week from November 10, 1940, to October 2, 1943. The trial judge held in her action that, because of the provisions of the charter of the city of Highland Park, and the rules and regulations adopted by its police and fire commission, which specifically state in chapter 10, § 6, thereof that police matrons are not members of the police force, that she was entitled to recover such overtime pay.

In the third case, Julian F. Russell, a switchboard operator, who performed services for the police department, fire department, and city hall, and claimed compensation for overtime service in the amount of $1,684.22, was given a judgment on the ground that he was a city employee. It should be noted that in the Coulter and Russell cases the amount of overtime compensation allowed was based upon the testimony of Lilias F. Evans, controller of the city of Highland Park, who computed the amount these plaintiffs should receive in the event the court held they were entitled to such overtime compensation.

In the Olson case the plaintiff appealed and in the Coulter and Russell cases the city appealed. Olson's position is that he was an employee and that he rendered overtime service under threat of suspension and because his superior had determined that it was required because of necessity or impairment of city service. He claims he is entitled to additional compensation therefor under the provision of chapter 25, § 33, par. c, of the charter of the city of Highland Park, which reads:

"Rate of compensation. The rate of compensation for excess service rendered by any employee of the city of Highland Park of whom service in excess of the regular service day or the regular service week shall have been required in the case of emergency, as here provided, shall be for Sundays and other holidays twice the regular rate of compensation, and for other days one and one-half times the regular rate of compensation."

The city contends that the trial judge was correct in holding that Olson was not an employee within the purview of this provision of the charter. Olson was appointed as a probationary patrolman on January 28, 1936, by the police and fire commission, subject to certain conditions which were satisfied on or before February 3, 1936, when his appointment was confirmed. He thereafter served, first, as a grade "D" patrolman, and after advancement from time to time became a grade "A" patrolman. He has been paid a regular annual salary, semimonthly, and in addition to the 40 hours per week ordinarily required, has unquestionably put in a large number of hours of overtime service. The record contains some testimony which indicates that the city officials regarded Olson as an employee, and that there was attached to each of his pay checks a stub, entitled "employee's statement," on which his net pay was calculated.

Under chapter 12, § 2, of the charter of the city of Highland Park the police and fire commission has general control and management of the divisions of police and fire service. The powers of the members of the police force appointed by them are recited in chapter 12, § 12, and include the exercise of powers under the penal laws of the State, the ordinances of the city, and the provisions of its charter, including all the powers given by law to constables for the preservation of quiet and good order and such other powers as are conferred generally upon peace officers of the State. Chapter 12,

§ 8, of the charter provides that the members of the police force and all employees thereof shall receive such compensation as the council of the city "may subscribe." The charter further provides in section 6 of this same chapter that the police and fire commission shall, subject to approval by the council, adopt rules and regulations for the organization and conduct of the department. Such rules and regulations were adopted by the commission on November 2, 1931, and approved by the council on the same date.

Under the foregoing provisions of the charter the council from year to year, by ordinance, fixed the annual salaries of all patrolmen and other officers of the department, and Olson was paid accordingly.

Whether Olson was an employee or an officer of the city depends primarily upon the provisions of the charter. *Millaley* v. *City of Grand Rapids,* 231 Mich. 10. See, also, *Blynn* v. *City of Pontiac,* 185 Mich. 35 (8 N. C. C. A. 793).

The charter in question, by its language, differentiates between employees of the department and officers thereof. For example, chapter 12, § 3, reads in part:

"The council may also authorize the employment of civilian employees who, however, shall not be considered as members of the police force or fire force as those terms are used in this charter."

In the section with respect to compensation a distinction is made between members of the department and employees thereof. In the regulations the same distinction is made. Members of the police force are entitled to leave days and furloughs, while employees are entitled to vacations. The distinction between employees and officers under comparable provisions to those found in the Highland Park charter is pointed out in the *Blynn Case, supra.* We

have had occasion recently to refer to other distinctions in *Fraternal Order of Police* v. *Lansing Board of Police & Fire Commissioners,* 306 Mich. 68.

Olson was an officer and not an employee, and in the absence of any provision therefor in the charter, rules and regulations of the department, or ordinances of the city, he is not entitled to overtime pay. We find no such provision and the judgment as to Olson should be affirmed.

Frances Coulter, a matron of the police department, was a member of the women's division thereof. That division consists of police women and matrons. Matrons are required to perform such duties as shall be assigned to them from time to time by the chief of police or their commanding officer. See chapter 10, § 5, of the rules and regulations of the department. Section 6 of this chapter reads:

"Police matrons may be appointed special police officers by the commission with full power to arrest. They shall not be members of the police force."

Matrons, not being members of the police force, are of necessity employees of the city. As employees, they are entitled to compensation for overtime services rendered under the provisions of chapter 25, § 33, par. (c), of the charter of the city of Highland Park, and the trial judge so held with respect to the claim of Frances Coulter.

The city contends that, because plaintiff Coulter performed services prescribed by the legislature in Act No. 109, Pub. Acts 1897, as amended (1 Comp. Laws 1929, § 2716 *et seq.* [Stat. Ann. § 5.3301 *et seq.*]), and in one place therein the term "such office" is used, she was an officer and not an employee. The language of the charter is, however, mandatory and the city should not be permitted to take a position in direct contravention of the mandate of the charter adopted by the electors.

The charter amendment for overtime compensation to employees provides for a service day of eight consecutive hours of any one day of 24 hours, and a service week of five days in any consecutive seven days with twice the regular rate of compensation for services rendered on Sundays and other holidays, and on other days one and one-half times the regular rate of compensation for services in excess of the regular service day or regular service week.

The city contends that, because article 5, § 29, of the Michigan Constitution commits to the legislature power to enact laws relative to hours and conditions under which men, women and children may be employed (see *Grosse Pointe Park Fire Fighters Ass'n* v. *Village of Grosse Pointe Park,* 303 Mich. 405), a charter amendment on this subject, inconsistent with the State law, is void. We find no conflict between the statutes on the subject and the provisions of the charter; and in the absence of such conflict, there is no legal inhibition preventing the people of a municipality from speaking on that subject by their vote on an amendment to their charter when such amendment is not contrary to State law. *School District of the City of Pontiac* v. *City of Pontiac,* 294 Mich. 708, 717. See, also, *Attorney General, ex rel. Lennane,* v. *City of Detroit,* 225 Mich. 631; *Northrup* v. *City of Jackson,* 273 Mich. 20; and *Motorcoach Operators' Ass'n, Inc.,* v. *City of Detroit,* 284 Mich. 321, 328.

Plaintiff Coulter was an employee of the city and performed overtime service under the charter provisions for overtime compensation. The judgment in her case is modified as hereinafter noted and affirmed.

Plaintiff Russell was appointed to the position of telephone dispatcher by the police and fire commission and was carried on the pay roll of the division

of fire service. His duties were to attend the switchboard which handled incoming calls for the division of fire service and various departments of the city of Highland Park, including calls received over the fire alarm signal system and the police signal system. The city's position as to Russell is the same as that taken with respect to Frances Coulter, except that it does not deny that he was an employee. The reasoning in the Coulter case must also apply here, and the judgment in favor of Russell should also be modified and affirmed.

The city argues that the acceptance and indorsement of semimonthly 'pay checks constituted "a waiver or release of, or an estoppel to" claims for overtime compensation. We do not accept this argument because of the reasons expressed in *Kaminski* v. *Wayne County Board of Auditors,* 287 Mich. 62.

The city is not satisfied with the computation made by its controller as to the amount of overtime compensation, and bases its contention in part upon the effective date of the charter amendment. It argues that the amendment in question did not take effect on November 12, 1940, as determined by the trial judge, but on July 1, 1941, and, therefore, the amount of overtime compensation, if any, should be reduced accordingly. The amendment was submitted at the November 5, 1940, election. The affirmative result of the vote was certified and filed with the county clerk and secretary of State on November 12, 1940. The next fiscal year of the city began on July 1, 1941. The city contends that, having made up its budget and having appropriated funds for the fiscal year, it cannot be required to pay additional compensation during the fiscal year beyond the budgetary appropriation merely because the people have so decreed by their charter amendment vote.

Section 23 of chapter 25 of the charter provides:

"This charter may be amended or revised in the manner provided by the general laws of this State, and may be vacated by majority vote of the qualified electors voting thereon at any regular election or any special election called by the council of the city of Highland Park, and the procedure in such case shall be the same as is provided by law for the amendment or revision of the charters of cities. This charter shall not be amended, revised or repealed, or. the integrity of the municipal organization and incorporation of the city surrendered, abandoned or lost, otherwise than in the manner hereinbefore provided."

The general law, section 24 of the home rule act (Act No. 279, Pub. Acts 1909, as amended [1 Comp. Laws 1929, § 2228 *et seq.* (Stat. Ann. § 5.2071 *et seq.*)]), provided:

"If the charter, or any amendment thereto, whether of cities incorporated under the provisions of this act, or under an existing charter of the city heretofore granted or passed by the legislature for the government of the city, be approved, then two printed copies thereof, with the vote for and against duly certified by the city clerk shall, within thirty days after the vote is taken, be filed with the secretary of State, and a like number with the county clerk of the county in which such city is located and shall thereupon become law." *

Section 25 of this act reads in part:

"Any proposal or proposals contemplating increased expenditure of funds by the municipality shall become effective, if adopted by the electors, only at the beginning of that fiscal year of such municipality commencing not earlier than 60 days following the election at which such proposal or proposals were approved by the electors."

This language, adopted by the legislature as an amendment to the home rule act in Act No. 279, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2261, Stat. Ann. 1944 Cum. Supp. § 5.2104), modified the language of section 24 as to amendments "contemplating increased expenditure of funds by the municipality" in that the charter amendment in question

---

\* 1 Comp. Laws 1929, § 2260 (Stat. Ann. § 5.2103).—REPORTER.

established overtime pay for employees. It therefore did not become effective until the beginning of the next fiscal year, July 1, 1941.

The judgments in the Coulter and Russell cases are excessive in amount and must be reduced to conform to the period beginning July 1, 1941. They are vacated and each case is remanded for the entry of a judgment in conformity with this opinion. The judgment in the Olson case is affirmed. Because of the nature of the cases, no costs will be allowed.

STARR, C. J., and NORTH, CARR, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.

### ON APPLICATION FOR REHEARING.

PER CURIAM. Rehearing is denied in the *Olson Case* without further comment.

In the *Coulter* and *Russell Cases* defendant urges a rehearing on several grounds, among them being that an improper method of computing overtime compensation was approved. We do not agree with this contention.

It is also urged that the opinion heretofore filed should have answered appellant's Question 5:

"Can the plaintiffs recover for overtime work where no emergency existed?"

Consideration was given to this matter and defendant's contention was not deemed meritorious. The records in the several cases have been re-examined and are found to contain sufficient testimony to satisfy the charter requirements as to performance of service by the respective employees in cases of emergency. Had not such overtime services been rendered the result would have been "a serious loss, damage or impairment of the city's service," which under the charter provision in question (chapter 25, § 33, par. a) constitutes an emergency. We do not deem it important to detail such factual testimony.

The applications of the City of Highland Park for rehearing are denied.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.