LOWRY *v.* CITY OF CLEVELAND ET AL.*

(No. 912253—Decided December 12, 1972.)

Common Pleas Court of Cuyahoga County.

*Mr. Phillip Barragate,* for plaintiff.
*Mr. Richard Hollington,* law director, *Mr. Howard H. Fishkin, Mr. Nicholas Devito* and *Mr. Richard Bloomfield,* for defendants.

McMONAGLE, J.    This case presents issues which unfortunately grow out of differences which have occurred between allies engaged in the war on crime that is being carried on in this community.

*Appeal dismissed, May 17, 1973.

The need for the exertion of greater efforts by all persons in public service who are involved with the prevention and deterrence of crime and the apprehension and speedy prosecution of criminals should be obvious. The so-called "person to person" or "stranger to stranger" type of crime—much of a violent nature—has skyrocketed in recent years. This shows that although the population of Cleveland has decreased by 125,047 persons from 1961 to 1971, that there has been a numerical increase of three and one-half times the number of homicides, ten times the number of rapes, five times the number of narcotics arrests, three and one-half times the number of burglaries, and over seven and one-half times the number of cars stolen. It is appalling—even to a court that has daily contact with matters involving crime and criminals—to hear that currently——during a period of a year's time—that one out of every 15 citizens becomes the victim of a crime.

All agencies have worked zealously in an attempt to correct this trend of increased crime, and from the evidence herein have succeeded during 1972 in reversing the trend.

The courts, and chiefly the Cuyahoga County Common Pleas Court, which are charged with the responsibility of trying all felony cases, have contributed in the greatest degree to this reversal by the prompt disposal of felony cases.

In the last criminal jury trial tried to a conclusion by this court during its criminal cycle, the offense charged in the indictment occurred on September 9, 1972; the defendant was arraigned on October 25, 1972; and the trial was concluded on November 17, 1972.

Cases pending at the end of our criminal cycle have an average age of six days following arraignment.

Involved in this controversy is the executive branch of the government of the city of Cleveland and a great number of the members of its police department.

This is an action brought by the plaintiff, a patrolman, with approximately 24 years of service in the Cleveland Police Department, and now assigned to basic patrol. Defendants are the city of Cleveland, Ralph J. Perk, its mayor, and Gerald J. Rademaker, its chief of police. The

action is brought in behalf of the plaintiff and all other members of the Cleveland Police Department who are assigned to basic patrol. They claim they are being unreasonably and illegally burdened with more than their share of the war on crime.

Plaintiff contends that an order issued by the chief of police pursuant to instructions of the mayor is illegal, null and void and of no effect because it requires certain policemen to work in excess of 40 hours per week; that this is prohibited by Cleveland Ordinance No. 1.3522 (eff. 3-16-53); and that this may only be done in case of emergency and no emergency exists. Plaintiff asks the court to enjoin the defendants from continuing the order in effect.

The court assigned this action for trial on its merits within a few days of its being filed. At the time of the trial, defendants represented to the court that the order which is the subject matter of this lawsuit is to expire at midnight on December 24, 1972.

Following is a copy of the order:
"CPD Report Center       Departmental Notice 72-240
                November 28, 1972
"To the members of the department
"Subject—extra duty tours
"Effective Wednesday, November 29, 1972, and until further notice, all patrolmen assigned to the Division of Basic Patrol shall be required to work one /1/ vacation day each week. Compensatory time will be granted and credited to the members overtime account.

"Personnel will remain in their districts and shall be assigned primarily to vehicular patrol. Any man not assigned to vehicles shall be utilized on foot patrol and assigned to high crime areas and business districts.

"Commanding officers shall cause a report to be forwarded to the chief's office detailing the amount of overtime worked by each member during the previous week.
                    "By order of,
                    "Gerald J. Rademaker
                    "Chief of Police
"Recd. Ptl. Senn 35
"TT. P. Lippert       4.27 PM       11/28/72"

Ordinance 1.3522 is as follows:

"§1.3522 Working Hours—Division of Police.

"Except in case of emergency not to exceed eight hours shall constitute a day's work and not to exceed forty hours a week's work for any patrolmen or ranking officer in the Division of Police whose salary is provided for in Section 1.3502 of this Chapter, or any member of the Division whose salary is provided for in Section 1.3503 of this Chapter."

The authority of the mayor and of the chief of police is contained in the charter of the city of Cleveland:

"§67 Executive and Administrative Powers.

"The executive and administrative powers of the city shall be vested in the mayor, directors of departments and other administrative offices provided for in this charter or by ordinance.

"§68 Terms and qualifications of Mayor.

"The mayor shall be the chief executive officer of the city.

"§71 General Powers and Duties of Mayor.

"It shall be the duty of the mayor to act as chief conservator of the peace within the city; to supervise the administration of the affairs of the city; to see that all ordinances of the city are enforced; to recommend to the council for adoption such measures as he may deem necessary or expedient; to keep the council advised of the financial condition and future needs of the city; to prepare and submit to the council such reports as may be required by that body, and to exercise such powers and perform such duties as are conferred or required by this charter or by the laws of the state.

"§115 General Provisions.

"The city shall maintain a police force and fire force, and the mayor shall be executive head of both forces. If these forces are or shall be placed in a department in accordance with the provisions of section 77 of this charter, the director of this department shall be their executive head under the direction of the mayor.

"§116 Police Force—Control by Chief.

"The police force shall consist of a chief and such other

officer, patrolmen and employees as may be provided by ordinance or resolution of the council. In case of riot or like emergency the mayor may appoint additional patrolmen and officers for temporary service who need not be in the classified service. The chief of police shall be appointed by the mayor from the division of police or he shall have had training and experience in law enforcement and he shall serve at the pleasure of the mayor. Upon the termination of his service as chief of police, he shall, if appointed from the division of police, revert to the civil service status held by him at the time of his appointment, in so far as it is competent for this Charter so to provide. The chief of police shall have exclusive control of the stationing and transfer of patrolmen and other officers and employees constituting the police force, under such rules and regulations as may be established by the mayor or by the director of the department to whom the said chief of police may be immediately responsible.

"§196 Hours of Labor.

"Except in case of extraordinary emergencies, not to exceed eight hours shall constitute a day's work and not to exceed forty-eight hours a week's work, for any city employee of the city of Cleveland in the classified service thereof, and for any workmen engaged in any public work carried on or aided by the municipality whether done by contract or otherwise. The council shall by ordinance, provide for the enforcement of the provisions of this section."

Cleveland Ordinance 1.3502 authorizes a police force of 2830 men plus the chief. The evidence was to the effect that it currently has 2299 members.

The evidence presented in behalf of the defendants was to the effect that Cleveland was faced with the certain threat of an onslaught of "person to person" crime during the month of December, and that the protection of the citizens presented a case of emergency which necessitated the invoking of measures taken by the mayor and chief of police.

Testimony was presented which was to the effect that although funds had been provided by the federal govern-

ment for additional policemen, defendants were practically unable to hire them and assign them to duty during the month of December because of another lawsuit pending in federal court; that the federal court action was not to be heard until December 8, 1972; that this December the Growth Board was not supplying funds as they had previously done to provide additional police protection for merchants and others during the month of December; that as a result of attrition in the police department there were fewer men in the department in December, 1972, than there were in December of 1970 and 1971; that December is historically the month in which the greatest number of crimes are committed in Cleveland; and that as of November, 1972, 47,557 crimes consisting of murder, rape, robbery, aggravated assault, burglary, larceny, auto theft, and assaults not aggravated had been committed during 1972.

Mr. Richard L. Boylan, the director of the Impact Cities Anti-Crime Program for the city of Cleveland testified that "using the number of men that normally would be on duty in the city of Cleveland, we projected that in 1972 there would be 4,767 crimes committed in the month of December. This is if nothing occurred." This would be an increase over the average for the year 1972, the average being 4,307, or an increase of 11% in the month of December.

It was the contention of defendants that these facts, combined with the terrific increase in crime that had occurred in recent years, required the invoking of the emergency measures that are contained in the quoted order.

The plaintiff contended that since there was a decrease of crime of approximately 8% in 1972 over 1971, with fewer men and vehicles in the department, that it could not be considered that a case of emergency existed which warranted the issuance of the quoted order; that the ordinance contemplated an extraordinary emergency; and that an order such as was issued required a declaration of an emergency and action by the city council.

All persons who contributed to the 8% reduction, including the police, the defendants herein, and the courts are to be highly commended.

However, the court does not feel that an 8% reduction in a crime rate that had escalated up to 1000% constitutes the elimination of a case of emergency, particularly when 4767 crimes—an increase of 11% over the average for the year—would probably be committed in December without the 160 additional basic patrol officers which this order places on the streets.

Plaintiff's contentions with reference to an extraordinary emergency which is the phrase used in Section 196—even though the conditions might warrant such a finding—is not applicable here. The order does not require work in excess of 48 hours per week.

Plaintiff relies heavily on the case of *Youngstown Sheet & Tube Co.* v. *Sawyer, Secretary of Commerce* (D. C. 1952), 103 F. Supp. 569. In that case, President Truman ordered the seizure of steel mills by the Secretary of Commerce, relying on "inherent" or "residuum of power" of the Executive. The court held he did not have such power without legislative authority.

It may be stated, as a matter of law herein, that the decision as to whether such a case of emergency exists as would warrant requiring members of the police department to work in excess of 40 hours per week is to be determined by the mayor and the chief of police. This is in accordance with the charter of the city of Cleveland and the reported case law, and is applicable regardless of whether one policeman or many policemen are involved. It requires no determination or declaration by council.

See Charter Sections 67, 68, 71, 115, 116 and Ordinance 1.3522.

The decision is obviously one for the executive department, there being no reservation, limitation or restriction with reference thereto. Further, common sense dictates that an executive does not need an act of the legislative body before requiring a patrolman to work overtime where death or sickness of another employee or any other occurrence requires one or more men to fill in for others. This would be the situation if plaintiff's contentions were accepted.

In *Crane* v. *New York* (1945), 57 N. Y. Supp. 2d 251,

185 Misc. 456, the plaintiff fireman was ordered by the commissioner to work more than eight hours per day and in excess of 48 hours per week upon a determination of a case of emergency by the commissioner—not a legislative body.

The court also stated, at page 253, on the issue of emergency:

"* * * I can see no distinction between an emergency created by an unusually large and widespread conflagration and one created by the potentially dangerous condition existing in this city from January 1, 1944, to April 29, 1944, because of the war."

Attention is also called to paragraphs 10 and 11 of the syllabus in the case of *Baxter* v. *Philadelphia* (1967), 426 Pa. 240, 231 A. 2d 151 as follows:

"Validity of mayor's declaration of emergency justifying action in making civil service regulations immediately effective to be determined by situation as it reasonably appeared to mayor at time he made declaration and not as it appeared at subsequent time with benefit of hindsight.

"In declaring emergency effecting police work week, mayor had right to rely upon appraisal of the situation by financial and personnel experts."

Philadelphia apparently had a specific charter provision granting the mayor power to declare an emergency. This court is satisfied that the charter authority vests in the mayor in the instant case all the power required to act as he did.

The case of *Youngstown* v. *First National Bank of Youngstown* (1922), 106 Ohio St. 563, has been cited to the court. It was conceded by the parties in that case that a case of emergency did actually exist. The case is of some value only as it is reflective of the generally accepted feeling in Ohio by legislative bodies and the judiciary that the right to make a determination as to a case of emergency is fixed in the executive.

The authorities are replete with decisions concerned with the meaning of the word "emergency." These cases are chiefly concerned with matters involving illness, injury

or death, motor vehicles, public disasters, legislative declarations, appropriation of funds, schools, taxes, etc.

As usual, there are no reported citations on all fours with the present case. In *East New York Sav. Bank* v. *Hahn* (1944), 51 N. Y. Supp. 2d 496, 182 Misc. 863, the court upheld a determination of a "temporary emergency" notwithstanding the emergency had been of 11 years duration.

In *Grout* v. *Gates* (1924), 97 Vt. 434, 124 A. 76, the Supreme Court of Vermont held that an unforeseen increase in the registration of motor vehicles, violations of the motor vehicle act, and accidents resulting therefrom constitute an emergency within the contemplation of certain legislation.

In *Olson* v. *Highland Park* (1945), 312 Mich. 688, 20 N. W. 2d 773, the court upheld the validity of a contention that a serious loss, damage or impairment of the city's service did constitute an emergency.

In *Fennessey* v. *Pacific Gas & Electric Co.* (1942), 20 Cal. 2d 141, 124 P. 2d 51, the Supreme Court of California held that the word "emergency" as used in legislative enactments does not always have precisely the meaning ascribed to it by lexicographers.

This court is of the opinion that the word "emergency" as used in the ordinances is not restricted to meanings given it by lexicographers, but includes a permanent condition of insufficiency of service or of facilities resulting in social disturbances or distress which the evidence clearly indicates currently exists in Cleveland.

Where, as in this case, a member of the executive branch of a government has the right to exercise his discretion in determining whether the existence of certain facts does or does not constitute sufficient basis for a finding that a case of emergency does exist, a court may not generally substitute its judgment for that of the executive.

A court will only act where it appears from the evidence that the action by the executive clearly represents a gross abuse of discretion. In this case the court not only does not find that the acts of the mayor and the chief of

police did constitute a gross abuse of discretion, but the court also believes and so holds that the record amply discloses a case of emergency within the contemplation of the ordinance.

While not in issue in this action, it is apparent to the court that the men for whose benefit this lawsuit was filed are not so much concerned about working in excess of 40 hours per week as they are by the fact that they will not be compensated therefor, as are most workers not in an executive capacity, at a rate of one and one-half times their regular pay.

The compensation to be paid city employees is a legislative function of the council of the city of Cleveland. That council has legislated with reference to the payment for overtime work in Ordinance 1.4746 by providing that the inclusion or exclusion of any group of employees in said benefits shall be determined by the board of control. The board of control has excepted from such time and a half benefits for overtime (Resolution 15-71)(1), sworn employees of the police and fire departments.

The court is at a loss to understand why these men have been excluded from these benefits and assumes that if this situation is as unreasonable as it appears to be, that it will be corrected.

The court finds on the issues presented herein in favor of the defendants and a judgment entry is being concurrently signed and filed dismissing the complaint of the plaintiff.

*Complaint dismissed.*