PEOPLE v. MURPHY.

1. MUNICIPAL CORPORATIONS—TELEVISION SERVICE BOARD—SERVICE CHARGES.

Constitution of television licensing and service board, as provided by home-rule city ordinance, was not unconstitutional as not guaranteeing an impartial hearing as to licensees, where a majority of the board is not in the service business, the board is not in any manner empowered to fix prices or charges for service but is only permitted to demand that there shall be a listing of charges for service (Const 1908, art 2, § 16; CL 1948, § 117.4i, as amended by PA 1957, No 131; Detroit charter, title 3, chap 1, § 12[n]; Detroit Ordinance No 110-F).

2. CONSTITUTIONAL LAW—POLICE POWER—PUBLIC FINANCIAL SAFETY.

The police power relates not merely to the public health and public physical safety but, also, to public financial safety.

3. MUNICIPAL CORPORATIONS—TELEVISION SERVICE ORDINANCE—EQUAL PROTECTION.

Home-rule city ordinance, requiring certified technicians servicing television sets to be licensed and to list their charges, evidently directed toward protecting householders against financial loss caused by unscrupulous or irresponsible dealers, was not unconstitutional by reason of the fact that not all who enter homes to repair television sets are required to take a test, pay a fee, and procure a license, where there is good reason for not requiring all such work to be done by skilled technicians, and ordinance provides for permitting identified employees to perform repair service under the direction of a certified technician (Const 1908, art 2, § 1; Detroit Ordinance No 110-F, §§ 2.2, 2.9).

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Municipal Corporations § 334 et seq.
[2] 11 Am Jur, Constitutional Law § 278 et seq.
[3, 4] 38 Am Jur, Municipal Corporations § 336.
[5] 37 Am Jur, Municipal Corporations §§ 158, 159.
[6] 14 Am Jur, Costs § 91.

4. Same—Television Service Ordinance—Equal Protection.

> Home-rule city's television service ordinance is not discriminatory, where it treats alike all in the same classification and with the same degree of skill (Const 1908, art 2, § 1; Detroit Ordinance No 110-F, §§ 2.2, 2.9).

5. Constitutional Law—Equal Protection—Ordinances.

> An ordinance does not violate the equal protection clause merely because it is not all-embracing as long as it does treat alike all within the classification made (Const 1908, art 2, § 1).

6. Costs — Public Question — Constitutional Law — Television Service Ordinance.

> No costs are allowed in suit where the sole question involved is the constitutionality of home-rule city's ordinance licensing and regulating persons who service television sets, a public question being involved (Const 1908, art 2, §§ 1, 16; CL 1948, § 117.4i, as amended by PA 1957, No 131; Detroit charter, title 3, chap 1, § 12[n]; Detroit Ordinance No 110-F).

Appeal from Wayne; Ferguson (Frank B.), J., presiding. Submitted June 8, 1961. (Docket No. 46, Calendar No. 49,041.) Decided September 23, 1961.

William Murphy was convicted in traffic and ordinance division, recorder's court of Detroit, of operating television service business without license. Constitutionality of ordinance challenged by certiorari and conviction upheld. Defendant appeals. Affirmed.

*Nathaniel H. Goldstick,* Corporation Counsel, *G. Edwin Slater* and *John H. Witherspoon,* Assistant Corporation Counsel, for the people.

*Gregory M. Pillon,* for defendant.

Kelly, J. The sole question presented in this appeal is whether the Detroit television ordinance (No 110-F) meets constitutional requirements.

The ordinance, directed toward regulating, licensing, installing, and servicing television equipment in the city of Detroit, states that a great abuse has resulted in the public "being victimized by irresponsible sales methods, unethical and financially unstable service organizations, and inferior installation, maintenance, and repairs."

This ordinance provides for a 9-member board, appointed by the mayor, consisting of 4 service dealers, a staff member of a television school licensed by the Michigan department of public instruction, a television engineer from a local television station, a representative of the Detroit department of buildings and safety engineering, a communications officer in a city division, and a resident of the city as a representative of the public at large.

Section 4i of the home-rule act (PA 1909, No 279), as amended by PA 1957, No 131 (CL 1948, § 117.4i, as amended [Stat Ann 1959 Cum Supp § 5.2082]), states that:

"Each city may in its charter provide:    *    *    *·

"For the regulation of trades, occupations and amusements within its boundaries, not inconsistent with State and Federal laws, and for the prohibition of such trades, occupations and amusements as are detrimental to the health, morals or welfare of its inhabitants."

The charter of the city of Detroit, title 3, chap 1, § 12(n), gives to the council the legislative power and duty:

"To provide for the regulation of trades, occupations and amusements and to provide for the prohibition of such trades, occupations and amusements as are detrimental to the health, morals or welfare of its inhabitants."

Appellant challenges the constitutionality of the ordinance creating the board, stating:

"The TV board is composed of 4 members who are competitors of the defendant. Should they have the privilege of examining the defendant's books and records, of regulating the defendant's charges, the defendant's advertising, of passing rules and regulations affecting the defendant, of deciding what are violations and making recommendations concerning the defendant's license? The board may be 100% fair, but members thereof are competitors."

To sustain his contention of unconstitutionality, appellant cites *Milk Marketing Board* v. *Johnson,* 295 Mich 644. The milk marketing act (PA 1939, No 146*) created a board of 5 members consisting of the commissioner of agriculture, 2 milk producers, 1 milk distributor, and 1 consumer. This board was empowered to establish prices for the sale of milk to the consumer. A divided court held the act invalid, stating (pp 657, 660):

"No claim is made that any member of the present board has acted unfairly or arbitrarily, but the fact remains that the act requires the appointment of a board, a majority of whose members have a direct pecuniary interest in the matters submitted to them.
* * *

"The board, as constituted under the statute, is of such a nature that Johnson was not, and could not have been, accorded that impartial hearing which satisfies the requirements of due process."

The decision in the *Milk Marketing Case, supra,* does not apply to the present appeal because a majority of the television board is not in the service business and said board is not in any manner empowered to fix prices or charges for services rendered. The ordinance only permits the board to demand that there shall be a listing of such charges in duplicate.

---

* Repealed as obsolete by PA 1944 (1st Ex Sess), No 29 (Stat Ann 1952 Rev § 2.341).—REPORTER.

An examination of the statutes discloses many instances where businesses or professions have on examining boards members of the businesses or professions to be regulated. To illustrate, the qualifications of architects, engineers, and surveyors are determined by a 7-member board consisting of 3 architects and 4 professional engineers (CL 1948, § 338.553 [Stat Ann 1957 Rev § 18.84(3)]); the qualifications of accountants are determined by the State board of accountancy consisting of 4 members, together with the governor ex officio, 3 of whom must be certified public accountants (CL 1948, § 338.501 [Stat Ann 1957 Rev § 18.1]); the qualifications of electricians are determined by an electrical administrative board consisting of the commissioner of the Michigan State police and 7 additional members, all of whom must be concerned with some phase of the business of an electrician (CLS 1956, § 338.882, as last amended by PA 1960, No 94 [Stat Ann 1959 Cum Supp § 18.204(2), as amended]).

Appellant contends that the fact that *all* who enter homes to repair television sets are not required to take a test, pay a fee, and procure a license, renders the ordinance discriminatory and, therefore, unconstitutional.

Section 2.2 of the ordinance provides:

"It shall be unlawful for any person to engage in the occupation or trade of a certified technician without a license therefor as hereinafter provided: Provided, That the provisions of this ordinance shall not apply to any employee of a licensed service dealer performing services with his approval under the direction of the certified technician, nor to a student or apprentice when accompanied and supervised by a certified technician. All such employees shall carry official identification cards, of such form and style as the board of examiners shall prescribe to be issued by the service dealer, identifying them as

authorized employees of said service dealer and bearing the license number of said service dealer which shall be displayed upon demand to the customer."

The ordinance, by requiring a license for a service dealer, was evidently directed toward protecting the householder against financial loss caused by unscrupulous or irresponsible dealers.

The police power relates not merely to the public health and public physical safety but, also, to public financial safety. Laws may be passed within the police power to protect the public from financial loss. See *Saigh* v. *Common Council of City of Petoskey,* 251 Mich 77; *People* v. *Sell,* 310 Mich 305.

The council determined that the service dealer did not have to be a skilled technician, but, if not, the dealer must have a skilled technician among his employees. All who service television receivers are not required to be skilled technicians. The corporation counsel asks us to take judicial notice of the fact that the television receiver is a piece of complicated electrical apparatus; that television repair is a comparatively new field with a limited supply of highly skilled servicemen; that many are as yet apprentices; that much of the service requires comparatively unskilled operations, such as the replacement of tubes; that to require a high degree of skill in all servicemen would be difficult to achieve, resulting in increased costs to the householder; that for these good reasons the ordinance permits identified employees to perform repair service under the direction of a certified technician.

Those who desire to function as individuals, rather than with an organization, can qualify under the ordinance both as a certified technician and a service dealer by obtaining under section 2.9 of the ordinance a "combination license."

We find nothing discriminatory in the ordinance, or in violation of the due process* or equal protection guarantee.† All in the same classification and with the same degree of skill are treated alike. The fact that the city of Detroit has not adopted an ordinance regulating the service of radio sets does not in any way affect the validity of the television service ordinance. In *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich 204, 215 (53 ALR 273), we stated:

" 'A statute does not violate the equal protection clause merely because it is not all-embracing.  *  *  * A State may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses.  *  *  *  The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and is not to be overthrown merely because other instances may be suggested to which also it might have been applied; that being a matter for the legislature to determine unless the case is very clear.' "

We conclude that ordinance No 110-F, as amended, is a valid exercise of police power and the decision of the lower court is affirmed. No costs, a public question being involved.

DETHMERS, C. J., and CARR, TALBOT SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

---

* Const 1908, art 2, § 16.—REPORTER.
† Const 1908, art 2, § 1.—REPORTER.