ASSOCIATED BUILDERS AND CONTRACTORS v CITY OF LANSING

Docket No. 313684. Submitted January 15, 2014, at Lansing. Decided
    May 27, 2014, at 9:10 a.m. Leave to appeal granted, 497 Mich ___.
    The Associated Builders and Contractors brought an action in the
    Ingham Circuit Court against the city of Lansing, challenging
    defendant's enactment of a prevailing wage ordinance applicable
    to contracts, agreements, or other arrangements for construction
    on behalf of the city. The trial court, Clinton Canady III, J., citing
    *Attorney General, ex rel Lennane v Detroit*, 225 Mich 631 (1923),
    which held that the setting of wage rates was a matter of state
    concern into which a city could not intrude, granted summary
    disposition in favor of plaintiff. Defendant appealed.

    The Court of Appeals *held*:

    1. Because the reasoning employed in *Lennane* has subse-
    quently been rejected by amendments of the Michigan Constitu-
    tion and by changes in Michigan caselaw, *Lennane* is inapplicable
    to the case at bar. Since *Lennane* was decided, the Constitution and
    Michigan's courts have interpreted the authority granted to cities
    in a much more liberal manner. The recognition of this broad
    authority differs significantly from the manner in which the Court
    in *Lennane* viewed the authority granted to cities in light of the
    law at that time.

    2. After the *Lennane* decision was issued, Michigan's courts
    have recognized an expansion in the police power granted to cities
    that is contradictory to the limited view of a city's police power on
    which the holding in *Lennane* rested. The Supreme Court has
    continued to recognize that the state's police power permits the
    Legislature to enact regulations concerning wages but Michigan's
    courts have recognized that unless expressly limited by statute or
    our Constitution, the police power possessed by cities is of the
    same scope as the police power possessed by the state.

    3. The enactment and enforcement of ordinances related to
    municipal concerns is a valid exercise of municipal police powers as
    long as the ordinances do not conflict with the Michigan Consti-
    tution or general laws. Ordinances exercising police powers are
    presumed to be constitutional and the burden is on the challenger
    to prove otherwise.

4. Absent a showing that state law expressly provides that the state's authority to regulate is exclusive, that the nature of the subject matter regulated calls for a uniform state regulatory scheme, or that the relevant ordinance permits what statutes prohibit or prohibits what the state permits, the mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription.

5. The reasoning employed in *Lennane* is no longer valid. The police power of Lansing, as a home rule city, is of the same general scope and nature as that of the state. The foundation upon which *Lennane* stood has been rejected by the Supreme Court, therefore, the reasoning employed in *Lennane* should not be applied in this case. The doctrine of stare decisis is not applicable where the controlling authorities have changed.

6. A home rule city possesses the authority to exercise the police power to control wages and salaries for those employed by the city. The police power relates to matters of financial concern. The enactment of a prevailing wage ordinance is a valid exercise of defendant's police power under the Michigan Constitution and the Home Rule City Act, MCL 117.1 *et seq.*

7. Defendant's prevailing wage ordinance does not directly conflict with state law, nor does state law completely occupy the field that defendant's ordinance attempts to regulate. The decision of the trial court is reversed and the matter is remanded to the trial court for entry of summary disposition in favor of defendant.

Reversed and remanded.

SAWYER, J., dissenting, disagreed with the determination of the majority that there has been a sufficient change in the law since *Lennane* was decided to warrant not following the *Lennane* decision. No constitutional or statutory provision that represents a change in law after the *Lennane* ruling expressly grants a city the authority to enact the type of ordinance at issue. The broad grant of authority to cities, which is to be "liberally construed" in favor of the cities pursuant to Const 1963, art 7, § 34, is the authority to regulate matters of municipal concern. Pursuant to *Lennane*, the type of ordinance involved in this matter involves issues of state concern. That conclusion has not been overruled.

1. MUNICIPAL CORPORATIONS — POLICE POWERS.

Unless expressly limited by statute or the Michigan Constitution,

the police power possessed by home rule cities is of the same scope as the police power possessed by the state.

2. MUNICIPAL CORPORATIONS — POLICE POWERS.

The enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police powers as long as the ordinances do not conflict with the Michigan Constitution or general laws.

3. MUNICIPAL CORPORATIONS — POLICE POWERS — CONSTITUTIONAL LAW.

Ordinances exercising police powers are presumed to be constitutional; the burden is on the challenger to prove otherwise.

4. MUNICIPAL CORPORATIONS — POLICE POWERS — CONSTITUTIONAL LAW — PREEMPTION.

The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements absent a showing that state law expressly provides that the state's authority to regulate is exclusive, that the nature of the subject matter regulated calls for a uniform state regulatory scheme, or that the ordinance permits what the state statute prohibits or prohibits what the state statute permits; the fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription.

5. STARE DECISIS — CHANGES IN CONTROLLING AUTHORITIES.

The doctrine of stare decisis may be found to be inapplicable to a Supreme Court decision when the controlling authorities on which the Supreme Court relied have changed and bear no resemblance to those presented in the prior decision.

6. MUNICIPAL CORPORATIONS — HOME RULE CITIES — POLICE POWERS — FINANCIAL CONCERNS.

A home rule city possesses the authority to exercise the police power to control wages and salaries for those employed by the city; the police power relates to matters of financial concern.

7. MUNICIPAL CORPORATIONS — PREVAILING WAGE RATES.

Neither the Minimum Wage Law nor the Michigan prevailing wage act prohibits cities from setting prevailing wage rates for contracts or agreements for construction on behalf of cities; neither act provides that the state's authority to regulate in the area of the

wages to be paid for construction contracts entered into by public entities for construction projects is to be exclusive (MCL 408.381 *et seq.*; MCL 408.551 to 408.558).

8. MUNICIPAL CORPORATIONS — PREVAILING WAGE RATES.

Nothing in the plain language of the Michigan prevailing wage act indicates that the statute's regulatory scheme is so pervasive as to inhibit a city from establishing a prevailing wage for contracts for construction involving the city (MCL 408.551 to 408.558).

*Masud Labor Law Group* (by *Kraig M. Schutter*) for plaintiff.

*Plunkett Cooney* (by *Michael S. Bogren*) for defendant.

Amicus Curiae:

*McKnight, McClow, Canzano, Smith & Radtke, PC* (by *John R. Canzano* and *Patrick J. Rorai*), for the Michigan Building and Construction Trades Council.

Before: SAWYER, P.J., and BECKERING and SHAPIRO, JJ.

BECKERING, J. Defendant, city of Lansing, appeals as of right the trial court's order granting summary disposition in favor of plaintiff, Associated Builders and Contractors, under MCR 2.116(C)(10). We reverse and remand.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant enacted a prevailing wage ordinance and plaintiff challenged the ordinance as an unconstitutional and ultra vires act. The ordinance at issue provides as follows:

(a) No contract, agreement or other arrangement for construction on behalf of the City and involving mechanics and laborers, including truck drivers of the contractor and/or subcontractors, employed directly upon the site of

the work, shall be approved or executed by the City unless the contractor and his or her subcontractors furnish proof and agree that such mechanics and laborers so employed shall receive at least the prevailing wages and fringe benefits for corresponding classes of mechanics and laborers, as determined by statistics compiled by the United States Department of Labor and related to the Greater Lansing area by such Department.

(b) Any person, firm, corporation or business entity, upon being notified that it is in violation of this section and that an amount is due to his, her or its employees, shall have 30 days from the date of the notice to pay the deficiency by paying such employee or employees, whichever is appropriate, the amounts due. If the person, firm, corporation or business entity fails to pay within the 30-day period, he, she or it shall be subject to the penalty provided in Section 206.99.

(c) The provisions of this section shall be inserted in all bid documents requiring the payment of prevailing wages.

(d) The enforcement agency for this section shall be as determined by the Mayor. [Lansing Code of Ordinances, § 206.18.]

In deciding whether the ordinance was valid, the trial court cited *Attorney General, ex rel Lennane v Detroit*, 225 Mich 631; 196 NW 391 (1923), and determined that defendant did not have the authority to enact the ordinance. The trial court reasoned that it was bound by *Lennane* despite defendant's "compelling arguments," and granted summary disposition to plaintiff.[1]

---

[1] Plaintiff originally challenged defendant's proposed living wage ordinance in addition to the prevailing wage ordinance. In ruling on plaintiff's motion for summary disposition, the trial court declined to address the living wage ordinance because it "was never enacted and is therefore not at issue here." Plaintiff asks this Court to rule on the matter. We decline to do so. Initially, we decline to consider this matter because plaintiff failed to file a cross-appeal with respect to this issue. *Barnell v Taubman Co, Inc*, 203 Mich App 110, 123; 512 NW2d 13 (1993). Further, because the ordinance has not been enacted, the claim is not ripe for review. *Huntington Woods v Detroit*,

II. MUNICIPAL POWERS AND A CITY'S POLICE POWER

We review de novo a trial court's decision on a motion for summary disposition. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475; 776 NW2d 398 (2009). Summary disposition pursuant to MCR 2.116(C)(10) is appropriate when the moving party is able to demonstrate that there are no genuine issues of material fact. *Coblentz v City of Novi*, 475 Mich 558, 568; 719 NW2d 73 (2006).

### A. *LENNANE*

In *Lennane*, 225 Mich at 633-634, our Supreme Court considered whether the city of Detroit could, consistent with the Constitution of 1908 and the home rule act,[2] enact a minimum prevailing wage ordinance similar to the ordinance in the case at bar. The ordinance at issue in *Lennane* provided as follows:

---

279 Mich App 603, 615-616; 761 NW2d 127 (2008) (quotation marks and citations omitted) ("A claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

[2] The home rule act is now known as the Home Rule City Act, (HRCA). See MCL 117.1a. "The [HRCA] is intended to give cities a *large measure* of home rule." *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 254; 566 NW2d 514 (1997) (emphasis added). The authority of a home rule city to enact ordinances is set forth in MCL 117.4j(3), which provides as follows:

For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state.

This same authority was granted to home rule cities at the time *Lennane* was decided. See 1915 CL 3307(t).

"SEC. 1. The service day for all employees of the city of Detroit during which they shall be required to work shall consist of eight consecutive hours in any one day of twenty-four hours. No employee shall be required or permitted to work for more than this eight-hour service day, except in case of any emergency which would result in serious loss, damage, or impairment of the city's service, unless the same employee or employees were required to remain continuously at work for a longer period, in which case, during the continuance of the emergency, the provision requiring the eight-hour service day may be suspended by the department head or proper subordinate in whose department the emergency shall have arisen.

"SEC. 2. No employee shall be required to work for more than six service days in any consecutive seven days of twenty-four hours each, except in case of any emergency which would result in serious loss, damage, or impairment of the city's service, unless the same employee or employees were required to remain at work in excess of the six-day service week, in which case during the continuance of the emergency the provision requiring a six-day service week may be suspended by the departmental head or proper subordinate in whose department the emergency shall have arisen.

"SEC. 3. The common council shall by ordinance provide for the proper re-adjustment of service time and for the proper excess of the regular service day or the regular service week [which] shall have been required in the case of any emergency as herein provided. But the common council shall provide for a rate of compensation for excess service which shall be for Sundays and other holidays not less than twice the regular rate of compensation, and for other days not less than one and one-half times the regular rate of compensation.

"SEC. 4. No employee doing common labor shall receive compensation in a sum less than two dollars and twenty-five cents per diem for an eight-hour service day. No employee doing work of a skilled mechanic shall receive compensation in a sum less than the highest prevailing wage in that particular grade of work. Whenever practi-

cable the per diem plan of employing common labor shall be in force. All wages and all salaries shall be paid weekly. Any employee who shall receive compensation for service rendered at a rate less than the minimum fixed herein may by an action for debt recover from the city the balance due him hereunder with costs.

"SEC. 5. No contract for any public work shall be let which shall not, as a part of the specification on which contractors shall make their bids, require contractor or subcontractor to pay all persons in his employ doing common labor and engaged in the public work contracted for not less than two dollars and twenty-five cents per diem, to pay all persons in his employ doing the work of a skilled mechanic and engaged on the public work the highest prevailing wage in that particular grade of work, and to require of such employees the same service day and service week required herein of all city employees. Any contractor who shall have entered into such contract with the city and shall have violated any provision of this section as made a part of his contract shall be debarred from any further contracts for public work, and any contract let to him contrary to this provision shall be void. Whenever it shall appear that any employee of any contractor for public work engaged thereon shall have received less than the compensation herein provided, the common council may cause to be paid to him such deficit as shall be due him and shall cause the amount so paid to be deducted from the balance due to the contractor from the city." [*Id.* at 633-635.]

In ruling that the ordinance at issue was invalid, the *Lennane* Court examined the authority granted to cities at that time and considered whether the ordinance exceeded that authority. *Id.* at 636-641. In interpreting the authority granted to cities under the Michigan Constitution, the Court, *id.* at 637-638, relied on §§ 20 and 21 of Article 8 of the Constitution of 1908, which provided:

Sec. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their

rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

Sec. 21. Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this state.

The Court concluded that neither the Constitution nor the home rule act granted cities the general exercise of police power. Rather, the Court concluded that "[t]he police power rests in the State." *Lennane*, 225 Mich at 638. The Court explained that "[u]nless delegated in some effective way the police power remains in the State." *Id.* The Court also noted "a popular misunderstanding" about home rule cities and "a widely spread notion that lately, in some way, cities have become possessed of greatly enlarged powers, the right to exercise which may come from mere assertion of their existence and the purpose to exercise them." *Id.* at 639 (quotation marks and citation omitted). The Court reasoned that cities possessed a very narrow scope of inherent police power, but beyond that narrow scope, "the police power, like any other power conferred on a municipality, must be expressly delegated by the Constitution or legislature of the State." *Id.* at 639-640 (quotation marks and citation omitted).

Nevertheless, despite characterizing the notion that cities possessed broad authority as a "popular misunderstanding," the Court assumed, without deciding, that a city "may fix a public policy applicable to its matters of *local* and *municipal* concern . . . ." *Id.* at 636 (emphasis added). See also *id.* at 641. The Court then framed the issue in the case as whether "the power of

the city to declare a public policy appli[es] to matters of *State concern*." *Id.* at 636 (emphasis added). The Court concluded that the defendant's attempt to set wage rates in that case was impermissible because it was an attempt by the defendant to interfere with a matter of *state concern. Id.* at 641. In reaching this conclusion, the Court noted:

> Attempts of the State to meddle with the purely local affairs of a municipality have been promptly checked by this court, and attempts of municipalities to arrogate to themselves power possessed by the State alone in its sovereign capacity must meet a like check at the hands of this court. Neither may trench upon the power possessed by the other alone. [*Id.* at 636.]

Therefore, the Court concluded that even if the defendant had a broad grant of authority to legislate with regard to matters of local concern, its actions in that case were invalid because it attempted to exercise police power over matters of state concern. *Id.* at 641. In pertinent part, the Court explained:

> In the provisions under consideration the city has undertaken to exercise the police power not only over matters of municipal concern but also over matters of State concern; it has undertaken not only to fix a public policy for its activities which are purely local but also for its activities as an arm of the State. The provisions apply alike to local activities and State activities. If we assume, as we have for the purposes of the case, without deciding the question, that the city possesses such of the police power of the State as may be necessary to permit it to legislate upon matters of *municipal concern*, it does not follow that it possesses all the police power of the sovereign so as to enable it to legislate generally in fixing a public policy in matters of *State concern.* This power has not been given it either by the Constitution or the home-rule act. [*Id.* at 640-641 (emphasis added).]

Consequently, the crux of the Court's holding in *Lennane* was its conclusion that setting wage rates was a matter of state concern, and that a city, even assuming it had broad authority to legislate on matters of local concern, did not possess the authority to exercise the police power over a matter of state concern. *Id.* Significantly absent from the Court's decision was any discussion as to why the setting of wage rates was a matter of state concern. Further, the Court provided little analysis and cited no authority for its conclusion that the setting of wage rates was a matter of state concern into which the city could not intrude.

In the case at bar, the trial court concluded that *Lennane* addressed the validity of a prevailing wage ordinance that was similar to the ordinance at issue and found that *Lennane* was binding and that it compelled the result in this case. The rule of stare decisis requires this Court to follow the decisions of the Michigan Supreme Court. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 447; 761 NW2d 846 (2008). For the reasons discussed later in this opinion, because we find that the reasoning employed in *Lennane* has subsequently been rejected by amendments of our Michigan Constitution and by changes in our caselaw, we find that *Lennane* is inapplicable to the case at bar.

### B. SUBSEQUENT LIBERAL CONSTRUCTION OF AUTHORITY GRANTED TO CITIES

Since the Supreme Court's decision in *Lennane,* our Constitution and our courts have interpreted the authority granted to cities in a much more liberal manner. Notably, in 1963, our Constitution was revised to provide:

> Under general laws the electors of each city and village shall have the power and authority to frame, adopt and

amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section. [Const 1963, art 7, § 22.]

The convention comment to this section states that this provision is a revision of Const 1908, art 8, § 21, and that it "reflect[ed] Michigan's successful experience with home rule. The new language is a more positive statement of municipal powers, giving home rule cities and villages full power over their own property and government, subject to this constitution and law." 2 Official Record, Constitutional Convention 1961, p 3393. The broad authority granted to cities is further illustrated by Const 1963, art 7, § 34, which provides:

The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution.

In accordance with this constitutional provision, this Court has recognized that we are to liberally construe statutes and constitutional provisions that grant authority to cities, townships, municipalities, and villages. *Hughes v Almena Twp*, 284 Mich App 50, 61-62; 771 NW2d 453 (2009).

In light of these subsequently enacted constitutional provisions and the liberal construction of a city's authority, our Courts have consistently recognized the broad grant of authority given to cities. See, e.g., *AFSCME v Detroit*, 468 Mich 388, 410; 662 NW2d 695

(2003) (quotation marks and citation omitted) ("We have held that home rule cities enjoy not only those powers specifically granted, but they may also exercise all powers not expressly denied."); *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 270; 566 NW2d 514 (1997) (recognizing that both the Michigan Constitution and the HRCA provide a broad grant of authority to cities); *Mich Coalition for Responsible Gun Owners v Ferndale*, 256 Mich App 401, 406-407; 662 NW2d 864 (2003). This broad grant of authority is subject only to certain restrictions enumerated in statutes or the Michigan Constitution. *Rental Prop Owners Ass'n*, 455 Mich at 253; *Detroit v Walker*, 445 Mich 682, 690; 520 NW2d 135 (1994). As explained in *City of Taylor v Detroit Edison Co*, 475 Mich 109, 116; 715 NW2d 28 (2006), quoting Const 1963, art 7, § 22:

> [T]he authority reserved to local units of government to exercise reasonable control over the enumerated subject areas is explicitly made subject to the other provisions of the Constitution. One such provision is art 7, § 22, which empowers cities and villages "to adopt resolutions and ordinances *relating to [their] municipal concerns*, property and government, *subject to the constitution and law.*"

The recognition of this broad authority differs significantly from the manner in which the Court in *Lennane* viewed the authority granted to cities in light of the law at that time. Indeed, as previously discussed, the Court in *Lennane* took a much more conservative view of the authority possessed by cities and found that the authority granted to cities had to be expressly granted by statute or constitution.

### C. RECOGNITION OF A CITY'S EXPANDED POLICE POWER

In addition to recognizing a broad grant of authority to cities, our courts have, after the issuance of *Lennane*,

recognized an expansion in the police power granted to cities that is contradictory to the limited view of a city's police power on which the holding in *Lennane* rested. Our Supreme Court has continued to recognize that the state's police power permits the Legislature to enact regulations concerning wages. See, e.g., *Western Mich Univ Bd of Control v Michigan*, 455 Mich 531, 536; 565 NW2d 828 (1997) (explaining that the Legislature, through the exercise of the police power, has the authority to regulate wages and conditions of employment); *People v Murphy*, 364 Mich 363, 368; 110 NW2d 805 (1961) ("The police power relates not merely to the public health and public physical safety but, also, to public financial safety."). However, in a significant contradiction to the reasoning employed in *Lennane*, our courts have recognized that unless expressly limited by statute or our Constitution, the police power possessed by cities is of the same scope as the police power possessed by the state. See, e.g., *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 481; 666 NW2d 271 (2003). As explained in *People v Sell*, 310 Mich 305, 315; 17 NW2d 193 (1945):

> Except as limited by the Constitution or by statute, the police power of Detroit as a home rule city is of the same general scope and nature as that of the State. Therefore, authorities relating to the police power of the State are equally applicable in relation to the police power of the city.

This conclusion is directly antithetical to the approach adopted by the Court in *Lennane*, which held that a city's police power was not of the same scope as the state's police power. The conclusion that our courts now recognize an expanded view of a city's police power different from the view espoused in *Lennane* is buttressed by cases that have upheld a city's authority to enact ordinances pertaining to wages. See, e.g., *Brim-*

*mer v Village of Elk Rapids*, 365 Mich 6, 12-13; 112 NW2d 222 (1961) (declaring that salaries paid by municipalities are a matter of local concern); *Gildersleeve v Lamont*, 331 Mich 8, 12; 49 NW2d 36 (1951); *Kane v City of Flint*, 342 Mich 74, 77-78; 69 NW2d 156 (1955); *Olson v Highland Park*, 312 Mich 688, 695; 20 NW2d 773 (1945).[3]

Consequently, our review of relevant post-*Lennane* caselaw reveals a fundamentally different framework with which our courts now evaluate the authority granted to cities and the scope of a city's ability to enact ordinances pursuant to its police power. Consistent with the recognition of the broad authority granted to cities by statute and the Michigan Constitution, our Supreme Court has adopted the following test for determining whether an action taken by a city is a valid exercise of the city's authority:

> The enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police

---

[3] In *Olson*, 312 Mich at 695, our Supreme Court upheld a city's regulation of overtime compensation for certain city employees. In reaching this conclusion, the Court found "no conflict between the statutes on the subject and the provisions of the charter[.]" *Id*. The Court then cited *Lennane* for the proposition that where a city ordinance does not violate state law, the ordinance is valid. In *Olson*, the Court cited *Lennane*, but did not apply *Lennane*'s holding—that an attempt by a city to regulate wages was impermissible because it interfered with a matter of state concern. Rather, the *Olson* Court appeared to recognize that a city ordinance, including one regulating wages, was valid as long as the ordinance did not conflict with state law. As discussed in detail later in this opinion, this approach is consistent with the approach our Supreme Court has subsequently employed to determine whether an ordinance is a valid enactment of the police power granted to cities and other municipalities. See *Gora v City of Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998) (quotation marks and citation omitted) ("The enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police powers as long as the ordinance does not conflict with the constitution or general laws.").

powers as long as the ordinance does not conflict with the constitution or general laws. Further, ordinances exercising police powers are presumed to be constitutional, and the burden is on the challenger to prove otherwise. [*Rental Prop Owners Ass'n*, 455 Mich at 253 (citations omitted).]

As explained in *Detroit v Qualls*, 434 Mich 340, 361-362; 454 NW2d 374 (1990), quoting 56 Am Jur 2d, Municipal Corporations, § 374, pp 408-409:

Absent a showing that state law expressly provides that the state's authority to regulate is exclusive, that the nature of the subject matter regulated calls for a uniform state regulatory scheme, or that the ordinance permits what the statute prohibits or prohibits what the state permits,

"*The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. . . . The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription.*" [Emphasis added; citations omitted.]

### D. *LENNANE*'S REASONING HAS BEEN REJECTED

In light of these changes to our Constitution and our caselaw, we find that the reasoning employed in *Lennane* has been rejected. Regarding changes to our Constitution, Const 1963, art 7, § 34 now requires this Court to construe the law concerning cities "liberally . . . in their favor." Such a provision did not exist at the time the Court decided *Lennane*. Moreover, as already discussed, our courts have, after *Lennane*, declared that a city's police powers are consistent with those of the state, unless limited by the Constitution or statute. *Sell*, 310 Mich at 315; *Belle Isle Grill Corp*, 256

Mich App at 481. Therefore, the reasoning employed in *Lennane*, i.e., that the city could not exercise its police power to enact a prevailing wage ordinance because wages owed to employees are purely a matter of state concern, is no longer valid. Thus, contrary to *Lennane* and consistent with *Sell*, 310 Mich at 315, we conclude that "the police power of [Lansing] as a home rule city is of the same general scope and nature as that of the State." Further, our Supreme Court has, after the issuance of *Lennane*, found that cities have the authority to regulate wages. See, e.g., *Brimmer*, 365 Mich at 13, citing *Gildersleeve*, 331 Mich at 12 (emphasis added) ("In upholding the salaries paid, this Court was, of course, treating with a matter of *purely local character*."); *Kane*, 342 Mich at 77-78; *Olson*, 312 Mich at 695. The view espoused in *Brimmer* and *Gildersleeve*, that salaries paid by municipalities are a matter of local concern, is directly contradictory to the linchpin of *Lennane's* holding. Consequently, the foundation upon which *Lennane* stood has been rejected by our Supreme Court. We find that the reasoning employed in *Lennane* should not be applied in the case at bar. See *Adams Outdoor Advertising, Inc v City of Holland*, 234 Mich App 681, 690; 600 NW2d 339 (1999). In *Adams Outdoor Advertising*, this Court recognized that a relevant Michigan Supreme Court decision had not been expressly overruled, but declined to apply the decision in that case because the rationale for the decision "has been superseded by . . . subsequent Supreme Court decisions . . . ." *Id*. at 689. We recognize that "this Court is bound by the rule of stare decisis to follow the decisions of our Supreme Court." *Tenneco Inc*, 281 Mich App at 447. Thus, we emphasize that we neither overrule *Lennane* nor deviate from the rule of stare decisis. Instead, we recognize that the controlling authorities "bear no resemblance to those presented in" *Lennane*,

and recognize that the doctrine of stare decisis is not applicable when the controlling authorities have changed after the Supreme Court issued its decision in *Lennane. In re Nestorovski Estate*, 283 Mich App 177, 196 n 6; 769 NW2d 720 (2009). Indeed, "[b]ecause the differences between this case and [*Lennane*] are plain and substantial, our decision does not contemplate doing the impossible, which would be to overrule [*Lennane*] or disregard it when it was binding precedent." *People v Pfaffle*, 246 Mich App 282, 304; 632 NW2d 162 (2001).[4]

### III. WHETHER DEFENDANT'S ORDINANCE IS INVALID

Having concluded that *Lennane* does not compel the outcome in this case, we examine defendant's ordinance to determine whether the ordinance conflicts with our Constitution or statutes. *Rental Prop Owners Ass'n*, 455 Mich at 253 ("The enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police powers as long as the ordinance does not conflict with the constitution or general laws."); *Czymbor's Timber, Inc v Saginaw*, 269 Mich App 551, 555; 711 NW2d 442 (2006).

### A. CONSTITUTIONAL AUTHORITY OF HOME RULE CITIES

"Home rule cities have broad powers to enact ordinances for the benefit of municipal concerns under the Michigan Constitution." *Rental Prop Owners Ass'n*, 455 Mich at 253. Additionally, the HRCA "is intended to

___

[4] We note that a prior panel of this Court criticized *Lennane* but concluded that it remained binding authority. *Rudolph v Guardian Protective Servs, Inc*, unpublished opinion per curiam of the Court of Appeals, issued September 22, 2009 (Docket No. 279433). For the reasons already discussed, we conclude that we are not compelled to apply *Lennane* in the case at bar.

give cities a large measure of home rule." *Id*. at 254. As already discussed, a home rule city possesses the authority to exercise the police power to control wages and salaries for those employed by the city. See *Brimmer*, 365 Mich at 12-13; *Kane*, 342 Mich at 77-78. Moreover, the police power relates to matters of financial concern. *Murphy*, 364 Mich at 368. Therefore, the enactment of a prevailing wage ordinance is a valid exercise of defendant's police power under the Michigan Constitution and the HRCA.

### B. PREEMPTION

The next step in our inquiry concerns whether defendant's prevailing wage ordinance conflicts with, and therefore is preempted by, state law. *Czymbor's Timber, Inc*, 269 Mich App at 555. "State law preempts a municipal ordinance in two situations: (1) where the ordinance directly conflicts with a state statute or (2) where the statute completely occupies the field that the ordinance attempts to regulate." *Id*. "A direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *Id*. We review de novo whether state law preempts an ordinance. *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 510; 838 NW2d 915 (2013).

We find that defendant's prevailing wage ordinance does not directly conflict with state law, nor does state law completely occupy the field that defendant's ordinance attempts to regulate. Initially, regarding conflict preemption, we note that the Minimum Wage Law, MCL 408.381 *et seq*. (MWL), and the Michigan prevailing wage act, MCL 408.551 to 408.558 (PWA), regulate minimum wages. Defendant's ordinance does not directly conflict with either of these statutes because

neither law prohibits cities or municipalities from setting prevailing wage rates for contracts or agreements for construction on behalf of cities. Therefore, we must determine whether field preemption applies.

Concerning field preemption, we consider four factors in determining whether a statute completely occupies a field:

> First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted.
>
> Second, pre-emption of a field of regulation may be implied upon an examination of legislative history.
>
> Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.
>
> Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest. [*Maple BPA, Inc*, 302 Mich App at 511, quoting *People v Llewellyn*, 401 Mich 314, 323-324; 257 NW2d 902 (1977) (quotation marks and citations omitted).]

Applying these factors to the case at bar, we find that defendant's prevailing wage ordinance has not been preempted by state statute. Regarding the first factor, neither the MWL nor the PWA expressly provides that the state's authority to regulate in the area of the wages to be paid for construction contracts entered into by public entities for construction projects is to be exclusive. First, concerning the MWL, the statute only sets forth a statewide minimum wage and does not prohibit wages in excess of the statewide minimum wage. See MCL 408.413 ("An employer shall not pay any employee at a rate that is less than prescribed in this act.").

Nothing in the plain language of the statute expressly forecloses the ability of a city to set a higher standard for construction projects. Thus, the MWL clearly does not preempt the ordinance at issue in this case.

We also find that the ordinance is not preempted by the PWA. Although the PWA sets a prevailing wage for contractors working on state projects, we find that nothing in the plain language of the PWA expressly provides that the state's authority to regulate in the area of prevailing wages paid to contractors is exclusive. In pertinent part, the PWA provides:

> Every contract executed between a contracting agent and a successful bidder as contractor and entered into pursuant to advertisement and invitation to bid for a state project which requires or involves the employment of construction mechanics, other than those subject to the jurisdiction of the state civil service commission, *and which is sponsored or financed in whole or in part by the state shall contain an express term that the rates of wages and fringe benefits to be paid to each class of mechanics by the bidder and all of his subcontractors, shall be not less than the wage and fringe benefit rates prevailing in the locality in which the work is to be performed.* [MCL 408.552 (emphasis added).]

As used in the statute, a "contracting agent" "means any officer, school board, board or commission of the state, or a state institution supported in whole or in part by state funds, authorized to enter into a contract for a state project or to perform a state project by the direct employment of labor." MCL 408.551(c). Cities are not included within the definition of "contracting agent[s]." Nothing in the express language of the statute provides that the state's authority to regulate in the field of prevailing wages for construction contracts is to be exclusive.

The second factor in a field preemption analysis concerns whether field preemption may be inferred

from a statute's legislative history. *Maple BPA, Inc*, 302 Mich App at 511. Our Supreme Court has explained that the PWA reflects the policy concern of protecting local wage standards by preventing contractors on state projects from using wages in bids that are lower than those prevailing in the area and by giving local labor a fair opportunity to participate. *Western Mich Univ Bd*, 455 Mich at 535-536. See also *West Ottawa Pub Sch v Director, Dep't of Labor*, 107 Mich App 237, 245; 309 NW2d 220 (1981) ("The Legislature has declared as the policy of this state that construction workers on public projects are to be paid the equivalent of the union wage in the locality."). The legislative history of this act shows that as originally enacted, the PWA was not intended to affect construction contracts entered into by local units of government. This Court's decision in *Bowie v Coloma Sch Bd*, 58 Mich App 233, 236; 227 NW2d 298 (1975), overruled in part on other grounds *Western Mich Univ Bd*, 455 Mich at 546, contains a discussion of the legislative history of the PWA. As originally passed by the House of Representatives, the PWA defined a contracting agent as "any officer, board or commission of the state, *or political subdivision thereof* or any state institution supported in whole or in part by state funds, authorized to enter into a contract for a state project or perform the same by the direct employment of labor." *Bowie*, 58 Mich App at 236 (quotation marks and citation omitted). After the House of Representatives passed its version of the PWA, members of the House of Representatives expressed concern that the language contained in the PWA was too broad and that the statute would intrude "into the local areas . . . ." *Id*. at 237 (quotation marks and citation omitted). Thereafter, when the Senate passed its version of the act, the language "or political subdivision thereof" was omitted from the act. In conference, the

House adopted the act as passed by the Senate. *Id.* at 236-237. On the basis of this history, and the intent of the Legislature in enacting the PWA, we conclude that we may not infer field preemption from the legislative history of the PWA. Indeed, in direct response to the legislative concerns about the PWA intruding "into the local areas," the Legislature enacted the Senate's version of the PWA to prevent such intrusion. In light of such action, we find that this factor does not support a finding of field preemption.

The third factor identified in *Maple BPA, Inc,* 302 Mich App at 511, requires us to consider the pervasiveness of the state regulatory scheme at issue. Here, nothing in the plain language of the PWA compels the conclusion that the statute's regulatory scheme is so pervasive as to inhibit a city from establishing a prevailing wage for contracts for construction involving the city. Indeed, by its express language the PWA applies to "state project[s]" that are "sponsored or financed in whole or in part by the state . . . ." MCL 408.552. Furthermore, the statute applies only when a "contracting agent," as used in the statute, authorizes the construction at issue. In pertinent part, a "contracting agent" under the statute is "any officer, school board, board or commission of the state, or a state institution supported in whole or in part by state funds, authorized to enter into a contract for a state project . . . ." MCL 408.551(c). Notably absent from this definition is any reference to cities or municipalities of any kind. Given the limited scope of the PWA's application, we do not find that the regulatory scheme is so pervasive as to preclude all local regulation. See *Rental Prop Owners Ass'n,* 455 Mich at 261 (declining to find that the regulatory scheme at issue was so pervasive that it precluded all local regulation when "[t]he statute does not inhibit municipalities from providing alternative

and consistent means" to regulate in the area in question); *Fraser Twp v Linwood-Bay Sportsman's Club*, 270 Mich App 289, 295; 715 NW2d 89 (2006). Cf. *Capital Area Dist Library v Mich Open Carry, Inc*, 298 Mich App 220, 239; 826 NW2d 736 (2012) (quotation marks and citation omitted) (finding that a district library, as a unit of local government, did not have authority to regulate in the field of firearms possession when the state "statutory scheme includes a broad, detailed, and multifaceted attack on the possession of firearms.").

The fourth factor in a field preemption analysis requires us to consider whether the nature of the regulated subject matter demands exclusive state regulation in order to achieve the uniformity necessary to serve the state's purpose or interest. *Maple BPA, Inc*, 302 Mich App at 511. Concerning this last factor, "where the nature of the regulated subject matter calls for regulation adapted to local conditions, and the local regulation does not interfere with the state regulatory scheme, supplementary local regulation has generally been upheld." *Llewellyn*, 401 Mich at 324-325. The nature of the subject matter in this case—wages paid to construction workers—clearly does not demand exclusive state regulation and is instead suitable to supplementary local regulation. Indeed, the establishment of prevailing wages is particularly amenable to local regulation because prevailing wages are to be set equal to prevailing wages *in the relevant locality*. See *West Ottawa Pub Sch*, 107 Mich App at 245. Further, the PWA allows for local regulation in this area because cities are not included within the definition of "contracting agent." Therefore, the subject matter in this case is well suited to local regulations, such as the prevailing wage ordinance in the case at bar. See *McNeil v Charlevoix Co*, 275 Mich App 686, 703; 741

NW2d 27 (2007). Cf. *Capital Area Dist Library*, 298 Mich App at 239-240 (finding that the nature of the regulated subject matter in that case—firearm possession—"undoubtedly calls for . . . exclusive state regulation" because a system of localized regulation could lead to confusing and conflicting regulations, thereby creating a great deal of uncertainty).

In light of the foregoing, we find that defendant's prevailing wage ordinance is a valid exercise of municipal power because it does not conflict with the Michigan Constitution or state law. *Rental Prop Owners Ass'n*, 455 Mich at 253 ("The enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police powers as long as the ordinance does not conflict with the constitution or general laws."). We also find that the holding in *Lennane*, which was premised on subsequently altered authority, does not compel our decision in this case. Accordingly, we reverse the decision of the trial court and remand for entry of summary disposition in favor of defendant.

Reversed and remanded. We do not retain jurisdiction.

SHAPIRO, J., concurred with BECKERING, J.

SAWYER, P.J. (*dissenting*). I respectfully dissent.

The majority seems to recognize that the ordinance at issue is invalid under the Supreme Court's ruling in *Attorney General, ex rel Lennane v Detroit*, 225 Mich 631; 196 NW 391 (1923). And the majority acknowledges that we are required to follow the decisions of the Supreme Court. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 447; 761 NW2d 846 (2008). But the majority argues that there has been a sufficient change

in the law in the 90 years following the *Lennane* decision to warrant this Court ignoring it. I disagree.

The majority looks to a phrase in Const 1963, art 7, § 34 not contained in the 1908 Constitution, which states that provisions of the Constitution and law concerning cities "shall be liberally construed" in the favor of the city. The majority also looks to various decisions of this Court and the Supreme Court that reiterate that principle. I certainly have no basis to disagree with that general principle. But what is lacking is any provision in the Constitution or statutes that expressly grants a city the authority to enact the type of ordinance at issue here that represents a change in law after the ruling in *Lennane*. That is, there is no particular reason to believe that the people, in enacting the 1963 Constitution, had any disagreement with the holding in *Lennane*. Nor has the Legislature seen fit to amend the Home Rule City Act, MCL 117.1 *et seq.* (HRCA), to explicitly grant the authority that *Lennane* concluded that cities lack. Indeed, the majority acknowledges in footnote 2 of its opinion that the statutory grant of authority to cities to enact ordinances, MCL 117.4j(3), reads the same today as it did at the time of *Lennane*. See 1915 CL 3307(t).

What the majority overlooks is that the broad grant of authority to cities, which authority is to be "liberally construed" in favor of the city, is the authority to regulate matters of "municipal concern" and that *Lennane* held that the type of ordinance at issue in that case and in the case at bar involves issues of *state* concern. *Lennane*, 225 Mich at 641. The Supreme Court in *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115-116; 715 NW2d 28 (2006), reiterated that a municipality derives its authority from either a grant by the Legislature or the Michigan Constitution itself. But

both the Constitution and the HRCA only grant cities the authority to legislate over issues of municipal concern. Const 1963, art 7, § 22; MCL 117.4j(3). Indeed, in discussing the various cases that state that cities enjoy a broad grant of authority, the majority conveniently omits the fact that those cases make that statement in the context of the cities' power over municipal concerns. See, e.g., *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 270; 566 NW2d 514 (1997) ("the home rule cities act afford[s] home rule cities broad power to act on behalf of municipal concerns").

Furthermore, this principle is not contradicted by the majority's observation that a home rule city's police power "is of the same general scope and nature as that of the State." *People v Sell*, 310 Mich 305, 315; 17 NW2d 193 (1945). Rather, cities possess such broad police powers within the area of authority granted to them by the Constitution or statutes. Indeed, *Sell* found that the ordinance at issue there was within the powers granted by statute.[1]

And the Court's conclusion in *Lennane* that this is a matter of state concern has never been overruled. Therefore, even if we apply a "liberal construction" to defendant's powers, they do not extend to this ordinance until and unless the Supreme Court revisits its conclusion in *Lennane*, or the Legislature explicitly grants cities the power to adopt prevailing wage ordinances.

---

[1] Interestingly, it also found that, because the ordinance at issue was part of an emergency war-time measure to assist the federal government in the war effort, "this ordinance should not be judged by the same tests as those applied to an ordinance enacted in peace time." *Id.* at 319. Accordingly, we should not look too closely at *Sell* for any general legal principle.

In sum, while it may be time for the Supreme Court to revisit *Lennane* and determine whether the principles set forth in that decision remain applicable today, it is within the province of the Supreme Court to do so, not this Court. That is, even if I were to accept all of the majority's arguments why the ordinance in this case is within defendant's authority to adopt were it not for the holding in *Lennane*, I would nevertheless be compelled to conclude that, because of *Lennane*, this Court would lack the authority to uphold the ordinance. To do so would overstep our bounds. It is not for us to reject the continued viability of *Lennane*. It is for defendant to persuade the Supreme Court to do so.

I would affirm.