ZAHRA, J.
(concurring in the result). I agree with the majority’s ultimate conclusion that the prevailing-wage ordinance is expressly authorized by Const 1963, art 7, § 22. I write separately to address the powers granted to municipalities by the 1963 Constitution.
Municipalities have never possessed inherent authority not expressly granted by the Constitution or laws of Michigan and do not have it today. It was not until the 1908 Constitution that municipalities were granted the power of self-governance, a concept known as “home rule.”
The 1908 Constitution required the Legislature to enact a general law for the incorporation of cities and villages:
The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.[1]
Section 21 of the 1908 Constitution also provided the first “charter” provision, vesting in municipalities the power of home rule. This provision allowed municipalities to frame, adopt, and amend their charters, and states:
*194 Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the constitution and general laws of this state.[2]
The Address to the People accompanying the 1908 Constitution explained the addition of constitutional provisions pertaining to home rule—a concept not found in prior constitutions—in detail:
The provisions herein contained are designed to meet the modern conditions affecting municipal affairs; to authorize through appropriate legislation that which has heretofore been denominated “Home Rule.”
These provisions constitute a marked advance from the present constitutional provisions relating to cities and villages by doing away with the principle of classification and with special charters, granted and subject to amendment only by the state legislature. The purpose is to invest the legislature with power to enact into law such broad general principles relative to organization and administration as are or may be common to all cities and all villages, each city being left to frame, adopt and amend those charter provisions which have reference to their local concerns. The most prominent reasons offered for this change are that each municipality is the best judge of its local needs and the best able to provide for its local necessities; that inasmuch as special charters and their amendments are now of local origin, the state legislature will become much more efficient and its terms much shorter if the labor of passing upon the great mass of detail incident to municipal affairs is taken from that body and given into the hands of the people primarily interested.
*195 Under these provisions, cities and villages, as under the present [1850] constitution, will remain subject to the constitution and all the general laws of the state.[3]
Thus, under the 1908 Constitution, municipalities had for the first time the power to govern their own affairs. But this constitutional change did not grant municipalities inherent authority based solely on the assertion of their existence. Instead, this was a specific but limited grant of the power of home rule that was “subject to the constitution and general laws of this state.”[4] The grant of home rule expressly provides municipalities with greater control over local affairs, but it did not create any inherent authority in municipalities. The Court in Attorney General ex rel Lennane v Detroit recognized this when it dismissed the notion that municipalities have inherent authority. The powers are limited to those “specifically enumerated and designated in the Constitution itself and in the home rule act.”[5]
The 1963 Constitution contains a similar charter provision to that found in the 1908 Constitution that specifically grants the power of home rule. The 1963 Constitution also added a provision that states, “[n]o enumeration of powers granted to cities ... in this constitution shall limit. . . the general grant of authority conferred by [Const 1963, art 7, § 22] ,”[6] This language merely guides courts on how to construe this constitutional provision. Despite the express grant of authority conferred by § 22, the 1963 Constitution *196 contains other enumerated powers granted to municipalities.[7] As it plainly states, the last sentence of Article 7, § 22 makes it clear that no enumeration of power in other parts of the 1963 Constitution “shall limit. . . the general grant of authority conferred by. . . section [22].” This language does not confer a new grant of power. Instead, it is a rule of construction. Municipalities are not sovereign entities that have inherent authority; they are creations of the state that derive their power and authority from the state.[8] We reiterated this fundamental principle in City of Taylor v Detroit Edison Co:
“[Local governments] have no inherent jurisdiction to make laws or adopt regulations of government; they are governments of enumerated powers, acting by a delegated authority; so that while the State legislature may exercise such powers of government coming within a proper designation of legislative power as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant.” [9]
The 1963 Constitution provided another rule of construction not found in previous constitutions that proves helpful to the disposition of this case. Article 7, § 34 of the 1963 Constitution directs that the laws and constitutional provisions relating to the specific grant of municipal powers be liberally construed:
*197 The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution.[10]
Applying this rule of construction to the present case, the city of Lansing’s prevailing-wage ordinance survives constitutional challenge. This ordinance requires that private employers pay their employees the local prevailing wage when contracting with Lansing for municipal projects.[11] This is strikingly similar to the ordinance at issue in Lennane. While the Lennane Court concluded that the prevailing-wage ordinance before it was a state concern outside the power of a municipality to regulate, the Court offered no reasoning to support its conclusion. Significantly, Lennane was decided under the 1908 Constitution, which did not direct a liberal construction of home rule authority. And while we give Lennane deference, the 1963 Constitution directs us to interpret matters of home rule liberally. Following this direction, it is apparent that the prevailing-wage ordinance before us today is a matter of municipal concern.[12]
In sum, I agree with the majority that under the 1963 Constitution, the city of Lansing’s prevailing-wage ordinance is a valid exercise of the specific grant *198 of authority found in Const 1963, art 7, § 22. I also agree with the majority that the outcome in Lennane should be overruled. Municipalities may only act pursuant to express grants of power. We are constitutionally mandated to construe that express power liberally. To this extent, I concur in the majority opinion.

 Const 1908, art 8, § 21.

 Official Record, Constitutional Convention 1907-1908, pp 42-43.

 Const 1908, art 8, § 21.

 Attorney General ex rel Lennane v Detroit, 225 Mich 631, 639; 196 NW 391 (1923), quoting Kalamazoo v Titus, 208 Mich 252, 261; 175 NW 480 (1919).

 Const 1963, art 7, § 22.

 See, e.g., Const 1963, art 7, § 23 (“Any city or village may acquire . . . parks, boulevards, cemeteries, hospitals and all works which involve the public health or safety.”); Const 1963, art 7, § 24 (“Subject to this constitution, any city or village may acquire .. . public service facilities . . . .”).

 See Bivens v Grand Rapids, 443 Mich 391, 397; 505 NW2d 239 (1993).

 City of Taylor v Detroit Edison Co, 475 Mich 109, 115; 715 NW2d 28 (2006), quoting Titus, 208 Mich at 262.

 Const 1963, art 7, § 34.

 Lansing Ordinances, § 206.18(a).

 I also agree with the Court of Appeals’ conclusion that preemption does not apply. Neither the Minimum Wage Law, MCL 408.381 et seq., which was repealed in 2014, nor the Michigan prevailing wage act, MCL 408.551 to MCL 408.558, prohibits municipalities from setting prevailing wage rates for municipal contracts or agreements. Additionally, no state law occupies the entire field of establishing prevailing wages. See Associated Builders & Contractors v City of Lansing, 305 Mich App 395, 414; 853 NW2d 433 (2014).